Good morning. May it please the court, Dwayne Bensing of the ACLU of Delaware, on behalf of Appellant Angelo Clark, I'd like to reserve three minutes for rebuttal. Over 130 years ago, our Supreme Court described solitary confinement as, quote, punishment of the most important and painful character. Over the course of the years, courts have evaluated prison conditions through the lens of the evolving standards of decency that mark the progress of a maturing society. Mr. Bensing, let me ask you something that troubles me, and I'll just be very honest with you. In your opening briefs, there was literally no reference to the underlying trial, right? There was no reference to the fact that part of this case went to trial and the jury verdict came back as a defense verdict. No reference whatsoever in your opening brief. It was conspicuous by its absence, quite frankly. What is it you're pursuing now? It's not a medical Eighth Amendment claim, right? Your Honor, it is a conditions of confinement claim, a conditions of confinement claim that has been recognized by courts time and again. Are there any collateral estoppel-type issues given the fact that you already tried half this case? No, Your Honor, because those are separate issues. There were four counts brought initially. And as we described in our briefing, in the reply brief, Your Honor, that Mr. Clark could allege that he was the cruel and unusual punishment by the medical treatment not being provided. He could also prove cruel and unusual treatment that he was confined in solitary because of his mental illness. But the count that he wasn't allowed to prove at trial, that he could have and should have been able to... 12B6 count. The 12B6 dismissal, that claim of conditions of confinement that placing a severely mentally ill person into solitary confinement for months on end is cruel and unusual punishment. That has been recognized throughout the years. We cited ten different district courts from Texas to New York. So at the end of the day, you're pursuing a claim of conditions of confinement claim that had no justifiable purposes. Your Honor, that's right. That's right. This is a conditions of confinement, and the court must take the entirety of the circumstances. That's the standard here. And what was alleged, what this court must take, or what the district court should have taken, is what was alleged in that complaint. And what we have alleged in that complaint is a seriously mentally ill person confined for months on end in an 8 by 11 cell with a single 4-inch window on the outside. That in and of itself has been recognized by courts. Indeed, solitary confinement without the severely mentally ill component of this has been recognized by each of the judges on this panel today. As solitary confinement in and of itself for long durations is a claim of Eighth Amendment cruel and unusual punishment. Nevertheless, we cannot, can we consider any deleterious medical effects that that confinement may have had? Because it has been found by a jury that Mr. Clark's medical complaints were adequately attended to. Your Honor, it's the confinement itself that was cruel and unusual. It's just as though the defendant appellants had broken my client's legs and then said, oh, well, we gave him crutches. The jury decided the crutches question. They didn't decide whether the actual confinement in solitary was in and of itself. But they also decided that he didn't need any further help for the broken legs. I'm sorry, Your Honor? They also decided that he didn't need any further help for the broken legs. Your Honor, that was a question that was addressed outside of whether Mr. Clark should have ever been in solitary in the first place. So he was provided health care within the confines of solitary confinement. The jury never got to the question of whether solitary confinement for a person with paranoid schizophrenia and bipolar disorder, day in, day out, in a room, all alone, with no social interaction except an hour every other day, the jury never got to decide whether that in and of itself is cruel and unusual. And what's your best opinion or case out there that supports your position on that claim? Your Honor, the Supreme Court in Taylor just in 2020 decided that six days of confinement that can, given all the conditions of that confinement, can rise to the level of cruel and unusual punishment. So looking at the totality of the circumstances here, certainly seven months can. This has already been decided as a matter of law by the Third Circuit in the Palachowicz case. What is the remedy that you're seeking in this case for your client? Reverse and remand, Your Honor. We want this to go. What do you expect to happen on remand? I expect, quite frankly, I expect an early summary judgment motion by our clients, saying that the conditions as they were for a person alleging, as he is alleging that we will be able to prove, was in and of itself cruel and unusual punishment, as a matter of law. And that corresponds with what this Court decided in Palachowicz. And so this question ought to be like deja vu all over again for the Third Circuit. In Palachowicz, there were separate allegations there. And the Court held that they could allege both the suicide issue, but also the conditions of confinement for a seriously mentally ill person. That's what we're asking this Court to allow us to do in this case. And what's the remedy that you would be seeking? The remedy that we would be seeking, Your Honor, would be the damages that are incurred by our client. Monetary damages? Yes, Your Honor. But you also want an opinion saying that seven months is an Eighth Amendment violation? Your Honor, I do. We do want that opinion. I think it's important. And as this Court said in Porter and Williams, it's important for the Third Circuit to answer those constitutional questions so that future defendants can't raise the defenses that have been raised here, though. We didn't know. It sounds like a long time to me to be put in a cell for seven months. But it has happened before, I would imagine. Your Honor, I'm not sure. It certainly happened before for my client. In 2012, my client was placed in solitary confinement for six months. This is concerning, but did the judge give any rationale for why seven months? Your Honor, that's precise. This is really a question for the prison officials, I think, and make that determination. I don't think so, Your Honor. I think that... Judicial decision? It is. You're in there for seven months? Cruel and unusual punishment is a judicial decision, Your Honor, and the Court defines the boundaries of the Eighth Amendment, not our prison officials. And we should not cede that to our prison officials. Time and again, when courts have been asked to address this question, they have said that the impact upon the serious substantial risk of serious harm upon people with serious mental illnesses is so severe that even a few days in solitary confinement is cruel and unusual, that that is an allegation recognized. I disagree with that, but was this brought up before the judge who made the decision? Your Honor, and that's precisely the problem with the lower court's ruling, is that it didn't consider this first question of the right that we were alleging had been violated. It jumped immediately to qualified immunity and only considered precedents where qualified immunity had been found, where that was discussed as an issue. But that's not the question on the first prong of the qualified immunity. We have to look at the specific rights that have been alleged. So here we're looking at a person with severe mental illnesses, who's not on death row, an important distinction, who has a serious mental illness, confined for seven months. You have to address that, what you just said before, the right. What is the right that he has? To not be confined in solitary confinement for extended periods of time. All right, what is an extended period of time and what isn't? Your Honor, I will leave that for our judges today, in your wisdom, to determine. But there are clear records of notice that this court can look to to find those outer boundaries. So let's assume we agree with you, hypothetically. We agree with you, okay? You can't put somebody in solitary with a severe mental illness for seven months. Government's going to say, we didn't know we couldn't do that, so we have qualified immunity. What's your response? I was hoping that you would agree with me earlier in my argument, but I'm glad that we can get to that point now. The question here is, were they on fair notice? And so that is really the standard here. Did they have fair notice? Was it fair for them to know, oh, placing a severely mentally ill person in solitary confinement for seven months is cool and unusual? How could they have possibly known? Where an official could be expected to know, they should be made to hesitate. And they should have been expected to know here. It should have raised concerns. The court in Williams said that the 2000 Schultz decision should have raised concerns about solitary confinement. So starting in 2000, all of the prisons within the Third Circuit should have raised concerns about the use of solitary confinement. This court has said, where do we get this notice, right? And Judge Estrepo wrote in the Perroza Benitez case that we can use district court cases to find this notice. Again, district court cases throughout the country had ruled that confinement for even a few days for severely mentally ill prisoners is cruel and unusual. So that could have been. The decisional law throughout the country could have put defendants on notice. It could have been the actual notice in the Classy litigation when they received that complaint in 2015. That was precisely the allegation raised. It didn't even include the extended amount of time, that complaint. It was just severely mentally ill plus solitary confinement. The judge ruled in Classy's favor saying that that states a claim of Eighth Amendment. That should have put defendants on notice. That decision came out in March 2016. My client was in his second month of solitary confinement. The Delaware law stating that no prisoner, much less a prisoner with severe mental illnesses, says that a judge shall not put a prisoner in solitary confinement for longer than three months. That's a judge, not a prison official. You're right, Your Honor. Do they pay any attention to what judges are told? Well, I hope we do pay attention to what judges say because that is fair notice. That a judge in all of their power to determine the sentence is incapable in Delaware of placing a person in solitary confinement longer than three months. What gave defendant appellants any idea that they could do it for seven, more than twice the amount allowed by Delaware law? This is unrebutted in defendant appellants' brief. Is that the appropriate fair warning information, what judges were told as opposed to what wardens were told, what prison officials were told? Your Honor, first let's look at the burden. The burden is on the defendants here to say that it wasn't, to prove that it wasn't clearly established. And we show all the sources of notice. So even if you leave, okay, well, they could ignore that. That has to do with judges and not prison officials. They could have looked at their own Department of Corrections policy that said, do not place severely mentally ill people into solitary confinement. They could have looked at the 2006 guidance from the Department of Justice when they came to Delaware and they said, this is troublesome. Is it a question of not placing in solitary confinement or is it the period of solitary confinement? Your Honor doesn't have to reach that question today. Certainly I would be pleased if this panel said that placing any severely mentally ill person in solitary confinement is a violation of the Eighth Amendment. And your position is he shouldn't have been put there in the first place? Your Honor, my position is that he shouldn't have been put there for seven months. That's the question before the court today. And I think that's an easier question. How do you make the decision, though? It's not that easy.  Sure. But the defendants here settled the Classy case saying that a severely mentally ill person should not be placed in solitary confinement at all. And for non-severely mentally ill people, the outer limit is 15 days. So even defendant appellants, by the time they settled this case in 2016, agreed that the outer bounds of solitary confinement are 15 days. But this court doesn't even have to decide that. My client was placed for seven months in 2016. So even if this court was compelled to say any allegation beyond 90 days, as the court held in the Davenport position, it was over 90 days. I do think seven months is a long, long time for somebody with severe mental illness or incapacity, yes. But what is proper? Are you just asking us to decide, no, that was too much? Yes, Your Honor. That is the question. It's clearly a binary decision. Extended amount of time for a person with severe mental illness in solitary confinement. They were clearly aware. What does solitary confinement mean for someone like this? It means an 8 by 11 cell with a single 4-inch window to the outside world. It means no other human contact except for when they slide a meal through a 4-inch slot and every other day for one hour. This is a person with paranoid schizophrenia, bipolar disorder. The court easily ruled in Taylor in 2020 that six days in a feces-covered room was cruel and unusual. Certainly for my client, who has paranoid schizophrenia, seven months? Getting back to notice, the Polakovich case, although it appeared after he was put in solitary, isn't the basis, the precedent used in that case, can that not be considered by us in this case? It certainly should be, Your Honor. And I think that Polakovich answers the first prong of the clearly established quite clearly. And there, those were 30 days since. This court had no problem saying that an allegation of cruel and unusual punishment for 30 days in solitary confinement was viable under an Eighth Amendment claim. What's the right remedy? The right remedy is a reverse enromend and that solitary confinement for extended periods of time, certainly seven months. He's not in solitary confinement anymore, right? Oh, you're right, Your Honor. Where there's a right, there is a remedy. Well, what's the remedy? He's not in solitary confinement. You're right. It seems like you want a scolding of the trial judge, well, don't do that, or something like that. Well, we do have to place the right standard. The judge didn't evaluate the cruel and unusual. What would you say is the right standard? Because some people really need to be put away, and some don't, and a lot don't. And so what is the proper guideline? If we were to say to the trial bench or the trial judges this solitary confinement should not extend or should only be imposed when there is irrational behavior, what are we to say as a guideline to the trial judges about solitary confinement? That extended periods of time in solitary confinement for severely mentally ill inmates violates the Eighth Amendment is cruel and unusual. Our facts are seven months. That's right. So everybody in this room has a different definition of what extended means. So are you asking, if you were writing the opinion, would you write extended or would you write seven months? I would write extended, Your Honor, because it's going to be the totality of circumstances that future district courts have to determine. So what the serious mental illness is may play a part in that evaluation. So for some clients or for some plaintiffs, that extended period beyond 15 days may clearly state an Eighth Amendment violation. So shouldn't we say seven months is extended? We will not in this case say what shorter period might be, but we clearly can say that seven months. I mean, is that what you are looking for? Absolutely, Your Honor. One other question on notice. The audit by the, I forget the name of the entity. NCA. Is that notice that we can take into consideration? Yes, certainly. How so? How so? They interviewed the defendant appellants right here. They had a conversation with him about the placement of people with severe mental illnesses in solitary confinement, and he completely disregarded and thought that he was above the law. And they told him it was bad? Yes, ma'am. Yes, Your Honor. I'm still curious about if we were to make a decision in this case, and we say that the seven-month period is extreme under the circumstances of this case, and therefore we remand, and then what? It goes back to a trial judge. And then what guidance does the trial judge have as to the appropriate period given the circumstances in this case? And Mr. Clark, I think his name is? Yes. He had a mental problem, obviously. But what guidance can you give a trial court or a trial judge as to what is an appropriate amount of time somebody can be in solitary confinement? Your Honor, that's precisely what the sources of notice that we provided to the court can show to prison administrators, that even in the settlement, zero days for those who are severely mentally ill, 15 days for those who are not. So anything beyond that, you know, we're certainly in the alleging an Eighth Amendment violation. Beyond 15 days? Beyond 15 days, I think, rises to the question. Beyond 90 days, I think, is actually unquestionable, as that was decided in 1988 by the Seventh Circuit. Thank you. Thank you, sir. Good morning. Good morning, Your Honor. May it please the Court, I'm Ryan Costa with the Delaware Department of Justice. I'm here today on behalf of my client, Robert Koop. With me is my colleague, Kenneth Wan. He is here on behalf of David Pierce, the other appellee in this matter. And I will be arguing on behalf of both of the appellees this morning. Why don't we start with the second question, the notice question. The notice question? I believe that that is a misstatement of what the law actually requires. I believe that the question before, the question that the district court decided and the question before this court, is whether qualified immunity applied warranting dismissal of the claims against the appellees. For qualified immunity to not apply, there must be a violation of a constitutional right, and that right must be clearly established. The purpose of the clearly established requirement is to make it clear beyond any reasonable doubt that any reasonable officer knows that his actions are unconstitutional and improper. So let's start with the Classey case. Counsel is arguing that your clients settled that case, so they understood that seven months in solitary may be out of bounds. Is that correct? No, Your Honor. I disagree with that. I think that there are a few issues with his invocation of the Classey complaint and settlement. The first issue is I do not believe that a ruling on a motion dismissed by a district court or a settlement is representative of clearly established law for purposes of qualified immunity analysis. The ruling said that Classey may have stated a claim to allow the Eighth Amendment to go forward, and then my client, the DOC, decided to settle that matter. The fact that they decided to settle the litigation and change the operating procedures does not speak to whether their prior operating procedures violated the Eighth Amendment and represented cruel and unusual punishment. But it speaks to notice that there was question about them, and is that not that type of notice makes the prison system more aware of what they're doing? I still don't believe that it has any bearing on qualified immunity analysis because whether or not there is notice that their prison practices could be improved, which is a constant and ever-changing process. The Department of Correction is always working to improve its procedures, its practices. But the fact that they settled, the fact that they were able to get funding to make changes to their operations and that they made changes to their operations. Are you saying they can just ignore that? No, absolutely not. They have to abide by their settlement agreement, and they did abide by their settlement agreement. Should they not understand why there was a settlement and why procedures are changing? Well, first, I think in terms of the question of notice, the ruling that my friend references is from March 2016, after Mr. Clark was already placed on the shoe. I do not have the date of the settlement agreement. What about Polakovich? It was decided afterwards, but I'm saying the basis for the decision in Polakovich, the basis for putting the prison officials on notice to decide Polakovich the way it was decided. Is that basis not also available to the defendants here? As a matter of fact, I believe that both this court and the Supreme Court have been clear that for a qualified immunity, the question is not whether there is some notice that some people have raised concerns about particular practices, but there has to be actual binding Supreme Court or third-person. All right. So there was adequate notice in Polakovich. Why was not that adequate notice in Polakovich adequate notice here? The Polakovich case was, one, different in that it was specifically addressing something else. It was the type of Eighth Amendment claims that may arise out of prison suicides. That's not the issue that was… It was dealing with solitary confinement, though, right? It was dealing with a number of things. I don't know whether the individual was held in solitary confinement specifically or a restricted housing unit. Solitary confinement. That's one of the reasons given for his suicide.  And I think the issue remains that at that time, the time Polakovich was ruled, that was after the events here took place. So it cannot… Right, but it was based on earlier events. There had to be fair notice in Polakovich. And what I'm saying is that that information available in Polakovich was also available to the defendants here and should have put them on fair notice as it has been ruled by this court in Polakovich. I think the principal issue in Polakovich was whether or not the deceased had received adequate mental health care and suicide prevention care given his… But also the issue in Polakovich was solitary confinement. And is it not appropriate for a warden of a prison when there are state and federal judicial decisions speaking on solitary confinement to consider them even if they are not in an entirely identical case? In that case, there was a question of adequate care that was allegedly not provided to the deceased. In this case, as your Honor… So you're saying that the basis of Polakovich is not adequate to give fair notice here. The fair notice in Polakovich would not be fair notice in this case. Is that your position? Polakovich, I do not believe, addressed the question of whether the law was clearly established for qualified immunity purposes. Well, we couldn't have decided Polakovich if it hadn't been based upon fair notice to the defendants, could we? Would you not have brought… if you felt qualified immunity would protect your defendants, wouldn't you have raised that defense? I'm not sure if you raised it in Polakovich or not, but certainly in Polakovich, there was a basis found to put the prison authorities on notice of the dangers to a suicidal plaintiff or the suicidal son of the plaintiff that solitary confinement had a deleterious effect on his mental health. And as a prison official, isn't it appropriate that the prison officials take notice of what that case says and the basis on which it is told and applies it to their general policy in ordering solitary confinement? I think it's certainly appropriate for prison officials to take notice of other cases in law as it is established. By the courts, they obviously need to be complying, and our clients made every effort and believe that certainly did comply with the Constitution. And in this case, unlike Polakovich, we actually went to trial on whether or not Mr. Clark received adequate medical care, whether the appellees were deliberately indifferent to Mr. Clark's serious medical needs. And in this case, a jury found that Mr. Clark did receive adequate medical care, that there was not a deleterious effect. He did not commit suicide, unlike the Polakovich case. It's a different circumstance, clearly, but more fundamentally, those issues went to a jury, and the jury ruled that he received adequate medical care. Judgment was entered, and they have not appealed that decision. The issue is medical care as opposed to the period of confinement? In Polakovich, yes, I believe that the issue... Medical care? I believe that case was the Third Circuit ruled upon the dismissal and the motion to dismiss stage. I believe they raised several issues, but one of the prime issues was the medical care, provided that there's a question about the nurse having noticed that he may have been suicidal, a history of suicide, and proper protocols were not... He committed suicide while he was in solitary confinement. I believe Mr. Polakovich did, yes. Let me read you this to see what your thought is. A complaint alleging harm from solitary confinement of a mentally ill detainee stated a viable Eighth Amendment claim. Your response to that?  I apologize, yes, Your Honor. A complaint alleging harm from the solitary confinement of a mentally ill detainee, which I think is what we had here, states a viable Eighth Amendment claim that should have been allowed to proceed. I believe... And from Williams v. Pennsylvania Department of Corrections. Williams v. Pennsylvania. I believe that that statement is certainly true, depending upon the facts, legends, circumstances presented. In this particular case, the district court found that the conditions of Mr. Clark's confinement, the allegations alleged, stated a viable Eighth Amendment claim under two different theories. There was just this third theory that was found that there was not sufficiently established law to allow it to proceed. I believe Williams is distinct factually. And in that case, the plaintiffs were both on death row. I believe the lengths of their confinement were six and eight years. And the issue there that the court was addressing was the fact that while they'd been in prison for a number of years, the prison didn't provide adequate procedures to have their housing, their confinement reviewed. So they'd been there, say, for five years, and there should have been some procedural mechanism where their housing was reviewed to see whether they could be moved. In this case, the DOC, and again, this all came out at trial, in the Eighth Amendment claims that went to trial and were considered by jury, that there was a process of practice and procedures where Mr. Clark was regularly reviewed, certainly far more frequently than six to eight years, but he was also seen by medical care. His mental state was assessed for any deleterious effects. I understand that he was in solitary confinement for a period of seven months, which strikes me as a very, very long time to be in a cell that you can never leave except to step out and step right back in. Why does he state a viable claim in this case? I think that he's found a state of viable claim for a few reasons in this case. If we want to get beyond, if we assume that there is clearly established law on this point and qualified immunity does apply in that regards, and we go to the viability of the claim, I think that the fact that there was a, that this is essentially a conditions of confinement claim that they're now presenting, that the question of whether the defendants were deliberately indifferent to a serious medical need has already been decided in favor of my clients. And so I'm not clear what is left of their claim to state a conditions of confinement claim. Most of the case, many of the cases they refer to having cited several district court cases. How about cruel and unusual punishment? What's that? You said the basis, you weren't sure of the basis of the claim. I was asking what about cruel and unusual punishment? That is certainly the question, is whether being held in maximum security housing for seven months after punching another inmate in the back of the head for multiple times is cruel and unusual punishment. In most of their cases that they rely upon talk about the lack of adequate medical care. They cite to Casey Lewis, for example, which is one of the chief cases they cite. It's a 1993 case from Arizona, which found it unconstitutional to isolate mentally ill prisoners without providing adequate mental health care. They found that stated a viable claim for cruel and unusual punishment. Easley v. Barnes was again for the proposition that an Eighth Amendment claim was stated when locked in solitary confinement with no mental health care medication. The same for Indiana Protection Advocacy Services. Your opponent has said that the basis, I believe he said the basis of his claim here is that this is cruel and unusual punishment. Now, can we not decide that without considering whether there were medical needs that weren't met, but simply being locked in by yourself in an eight by 11 confined area with only two four inch slits for daylight. When we look at the various forms of notice that were available, including the Delaware statute, including cases from other jurisdictions, including district court cases, including the Department of Justice survey. Can can we not consider whether seven months is cruel and unusual punishment? I see that I'm out of time. I want to try to answer your question fully. You referenced the Delaware statute putting them on notice. I don't believe it does in any way. It addressed the fact that a judge was permitted to sentence someone to solitary confinement for up to for up to three months. It has spoken nothing to how prison officials can operate the prison heads up. Isn't that a minimum heads up that we have real concerns about solitary confinement? And even the judicial officers sentencing people, you can do it for 90 days. I think that if you read the statute itself, it's not saying you it's not it's not a prohibition against solitary confinement. It's it's authorized. It's giving the judge the authority to sentence them for up to three months of solitary confinement, saying that is a tool that the judge has. And I think it needs to be pointed out that that statute was actually repealed last year. So in terms of whether it's but it wasn't repealed during the events in question. No, but to the extent that it's being argued that it interprets, it sets an Eighth Amendment standard. It's informative of the standard of cruel and unusual punishment. The fact that it's been repealed suggests that it doesn't actually. I don't think they would repeal a statute that. Maybe it is no longer noticed, but that does not indicate whether three months solitary confinement is good or bad. Maybe it was repealed because three months seemed too long. I mean, I don't think it answers whether or not solitary confinement is good or bad. I think that we would all agree that being put in prison is bad. The question is whether or not it's cruel and unusual punishment under the picture of circumstances. And I think that that is a question that is does not rise. Certainly this case, the cruel and unusual punishment is one best left to the prisons that have to the prison officials and the legislature who have to deal with concerns, not just for the mentally ill inmate that assaulted a another inmate, but need to be concerned about the rights of those other inmates that are in there with him, whether they're safe. He's left the general population, the staff. Isn't there a prison regulation that if a prisoner is too disruptive because of mental illness, he should be put in the psychiatric section rather than dealt otherwise like solitary confinement? I believe there is such a prison regulation, isn't there? The prison regulation that they referenced in their briefing provides that when someone is to be segregated into isolation, there has to be a screening done within, I think, 24 hours to determine whether their transfer to housing is inappropriate or require special accommodations. Again, this case went to trial. Screening did take place. Special accommodations in the form of mental health treatment being provided while he was in the shoe were provided. So I don't believe that there's any basis to claim that the appellees violated that regulation. You wouldn't disagree that placing a seriously mentally ill inmate in solitary confinement for an extended period of time violates the Eighth Amendment? Prohibition against cruel and unusual punishment. I would disagree that that is a hard question to answer. What is an extended period of time, obviously, and what is considered seriously mentally ill? I think it's a situation that depends upon... Annoying schizophrenic for seven months. I don't think in the facts of this case that this even approaches cruel and unusual punishment, and I believe that... Not even close? I do not believe so. And based upon the knowledge that I have of the treatment that he received, based upon the conditions in the prison, based upon the law, there's no Supreme Court precedent that supports... That demonstrates that there's no Third Circuit or other court of appeals precedent that says that that amounts to cruel and unusual punishment. The problem is mental illness. How do you punish somebody like that in a cell that may be something like 8 by 12, 24 hours a day, except maybe one hour that you can step out? Isn't that cruel and unusual punishment? I agree that it is a very difficult situation to deal with, whether it is appropriate to place seriously... Someone that's paranoid schizophrenic should be in the prison to begin with, and whether or not that is... They should be made the responsibility of the prison officials to... Versus being put in a psychiatric care center. That is a difficult question. I think in terms of what the best practices and how we as a society should treat those people is a fair question. Whether or not under clearly established law or any law set forth by these courts suggests that that's cruel and unusual punishment. I believe the answer is no. You're familiar with this case, which is Angela Clark, who had a serious mental problem. Yes. He was allowed to step out of a cell for about an hour or less and back in for the rest of the day. Would you not agree that's cruel and unusual punishment? No, and the jury also disagreed that it was cruel and unusual punishment. The jury... I would take some opposition to that statement. The jury decided that he was not denied medical treatment, and they decided that he was not put into solitary confinement in the beginning because of his mental illness. I apologize for respectfully disagreeing with Your Honor, but that is how the jury verdict form that was presented... Isn't that what they decided then? Both parties... I was very surprised when appellant's counsel made that argument in his reply brief. Both parties in the pretrial order stated that the issue to be resolved, or one of the issues to be resolved in the trial, was whether the appellees, whether Mr. Koop and Mr. Pierce were deliberately indifferent to Mr. Clark's medical needs. Medical needs. Yes, and the serious medical need of his... Not whether he received... It was whether they were deliberately indifferent to his medical need, being his serious mental illness, that being a medical need. And the jury found that they were not deliberately indifferent to his serious medical need. Now, generally, when you're looking at a serious medical need case, the question is whether they were provided with adequate medical care, and that was ultimately how the jury form was drafted, based in collaboration between plaintiff's counsel, who is actually not here today, but based in collaboration between plaintiff's counsel and myself and Mr. Wan, and the judge ultimately decided that it would be presented to the jury talking about adequate medical care. But the ultimate question, the legal question... What's that? Well, we realize that what we are looking at is narrowed, but it is narrowed down to cruel and unusual punishment, and I think that the question of whether a mentally ill person subjected to seven months of solitary confinement, even if all his medical needs are attended to, could perhaps be being subjected to cruel and unusual punishment. I'll respect... The opinion is ultimately the decision for you to make. I believe that the binding precedent in the case law does not support that that constitutes cruel and unusual punishment. Whether or not it's the best policy and what the best thing to do with seriously mentally ill patients in our society is one question, but whether or not it's cruel and unusual punishment under the Eighth Amendment is another, and I think it's clear in this case that what took place does not amount to cruel and unusual punishment, and the jury decided that as well in two Eighth Amendment theories, but not this third. Thank you, Your Honors. Thank you. Thank you, Your Honors. First on the separate question of medical care and solitary confinement, that question was decided in footnote 11 of Porter where they said, the question in this case is not whether the mental health care afforded to Porter was constitutionally adequate. A reasonable jury could conclude that defendants have been deliberately indifferent to the substantial risk of serious harm by leaving Porter in solitary. They're separate questions. I think this Court understands that. Judge Ventas, I want to address your question about what's the length of time here, and I'll just point you to Third Circuit precedent. In Schultz in 2000, 90 days was the outer limit. In Palachowicz in 2012, 30 days was the outer limit. In Mimana in 2019, four days. In the Supreme Court decision in Taylor 2020, six days. So we see in our case law this evolving standards of decency. What constitutes cruel and unusual punishment? How many days can a severely mentally ill person be placed? All that you mention is a lot different from seven months as I look at it. That's exactly right. And far less than seven months. And the question of whether defendant and appellants had notice here. How do you address that, though? I mean, if you're a lawyer, for example, and you see that this is ongoing, where somebody is being locked up for seven months who is already mentally disabled, how do you address that? How can you get a lawyer, for example, to address this case? Your Honor, I'll tell you from experience, it's difficult. It just seems like nobody was paying attention to this guy sitting in a jail cell for seven months, let out for one hour a day, no sunlight, probably getting worse than he was when he went in there. That's precisely accurate. And the record shows that perhaps he would have been left in there even longer but for the classy litigation that resulted in settlement saying that zero days for severely mentally ill people in solitary confinement. There's no evidence that he was about to be released prior to that period. The other notice here, really, again, the burden is on them. Did they have a fair warning? And we talked about all the ways in which the warning signs should have been flashing for defendant and appellants. That the law was repealed really is of no relevance here because the DOC policy now after the classy settlement says zero days for those with severe mental illness and 15 days for all others. So that's now through the settlement agreement decided and the Department of Corrections policy itself. All of those warning signs completely unrebutted by defendant and appellants today. Their silence on that is deafening. They have not met their burden. And the ostrich defense of we didn't know just doesn't work here. As Madrid said, dry words on paper cannot adequately capture the senseless suffering. On May 5th, Mr. Clark said, when am I getting the hell out of here? Indeed, he was in hell. On the question of how this will be fixed, it's an assessment of damages just like in a tort. That's how 1983 are resolved. We ask that this court reverse and remand. Thank you, counsel. Thank you, everybody, for their excellent briefing and argument. And we will take this case under advisement. Have a good day. This court stands adjourned until tomorrow at 10 a.m. Thank you.